```
         IN THE UNITED STATES DISTRICT COURT FOR THE
               SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

DARRYL D. RIGGINS, AIS #184051, :

    Plaintiff,                        :

vs.                                       : CIVIL ACTION 12-0578-WS-M

CORIZON MEDICAL SERVICES,     :
*et al.*,
                                       :

    Defendants.

## REPORT AND RECOMMENDATION

This § 1983 action was removed to this federal district court from the Circuit Court of Escambia County, Alabama, by some of the Defendants to a Complaint filed by a *pro se* prisoner. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), this prisoner action has been referred to the undersigned for appropriate action. It is recommended that this action be dismissed without prejudice pursuant 28 U.S.C §1915(g) for the reasons state herein, unless Plaintiff pays the $350 filing fee within the time period for filing objections to this Report and recommendation.

I.   <u>Nature of Proceedings</u>.

    In reviewing this action, it appears that Plaintiff was allowed to proceed in state court without paying a

filing fee.[1]  Subsequently, Defendants removed the action to this Court and paid the $350 filing fee.  (Dkt., Doc. 1). In this Court Defendants Corizon, Inc., Donny Myers, Sylvia Hicks, and Ashley Wall ("Medical Defendants") filed their Answer and Special Report.  (Docs. 5, 6).  Correctional Defendants D. Dixon and Anthony Weaver have not appeared, and according to the state court docket sheet, service has not been attempted on them.  The gist of the Complaint is that Plaintiff does not want correctional officers to be allowed to deliver medicine to him in the place of health care personnel because in one instance he became ill after an officer delivered medicine to him, and based on this incident, he wants compensatory and punitive damages and declaratory relief.

II. Analysis.

  A.  Subject Matter Jurisdiction.

When an action is removed to this Court, one of the Court's initial inquiries is whether its subject matter

---

[1] The docket sheet in *Riggins v. Corizon Medical Services,* CV-2012-000073.00 at www.alacourt.com did not reflect an entry for payment of a filing fee or for an affidavit of substantial hardship.  Thereupon, the Court contacted the Escambia County Circuit Clerk's Office and was told that generally matters concerning the filing fee and its waiver are not reflected on the electronic docket. The Court was further informed that Plaintiff, indeed, filed an affidavit of substantial hardship and was allowed to proceed without paying a filing fee.

jurisdiction over the removed action exists. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 587-88, 119 S.Ct. 1563, 1572, 143 L.Ed.2d 760 (1999) (Examining the existence of "subject-matter jurisdiction at the outset of a case ... [is] often ... the most efficient way of going") (citation and quotation marks omitted and alterations in the original).  A review of Plaintiff's Complaint indicates that this Court has concurrent jurisdiction with the state court over this § 1983 action.  *Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988) (state courts possess concurrent jurisdiction with federal courts over § 1983 actions).  And the Court's jurisdiction over a removed prisoner action is not defeated by 28 U.S.C. § 1915(g).  *Lloyd v. Benton,* 686 F.3d 1225, 1227 (11th Cir. 2012) (vacating the remand of a prisoner action to state court that was based on the reasoning that the remand furthered the purpose of the Prisoner Litigation Reform Act ("PLRA") and was fair to all parties).[2]

---

[2] The *Lloyd* court determined that the state-court prisoner action had been properly removed to federal court, vacated the district court's remand order, and remanded the action to the district court for further proceedings.  *Id.* at 1228.  In reaching its decision, the Eleventh Circuit relied on *Lisenby v. Lear,* 674 F.3d 259 (4th Cir. 2012), which had an almost identical issue.  *Id.*  The Fourth Circuit, in remanding the action to the district court, did not address whether the action should be dismissed or heard on the merits.  *Lisenby,* 673 F.3d at 263 n.3.  The *Lloyd*

B.  Application of 28 U.S.C. § 1915(g).

Inasmuch as the Court has jurisdiction over Plaintiff's action, the procedures that apply to a prisoner action filed in this Court require that a determination be made if the action can proceed or if it is precluded by 28 U.S.C. § 1915(g). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

In enacting the PLRA, which included § 1915(g), Congress sought "to reduce the quantity of inmate suits." *Jones v. Bock,* 549 U.S. 199, 223, 127 S.Ct. 910, 925, 166 L.Ed.2d 798 (2007). To bring about the reduction of "the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time

---

court likewise did not address the issue.  *Lloyd,* 686 F.3d at 228.

4

with which to pursue their complaints[,]" "Congress placed various restrictions on the ability of prisoners to seek judicial relief and the form such relief may take." *Al-Amin v. Smith,* 637 F.3d 1192, 1195 (11th Cir. 2011) (quotation marks and citation omitted).  Therefore, in order to effectuate the intent of Congress in enacting the PLRA, the Court is obligated to apply § 1915(g) to prisoner actions that are filed initially with the Court and prisoner actions that are removed to this Court.  *See Skinner v. Switzer,* \_\_\_ U.S. \_\_\_, 131 S.Ct. 1289, 1299-1300, 179 L.Ed.2d 233 (2011) (holding that Congress "add[ed] 28 U.S.C. § 1915(g) to revoke, with limited exception, *in forma pauperis* privileges for any prisoner who has filed three or more lawsuits that fail to state a claim, or are malicious or frivolous"); *Abdul-Akbar v. McKelvie,* 239 F.3d 307, 315 (11th Cir.) ("Potentially negative consequences in *federal* courts, as distinguished from *state* courts, are precisely the consequences intended by Congress.")(emphasis in original), *cert. denied,* 533 U.S. 953 (2001).  Whereas, not to apply the "three-strikes" rule to Plaintiff's removed state court action would allow Plaintiff to accomplish an end-run around the "three-strikes" rule by filing in state court and hoping, perhaps, for removal of his action to this Court.

In reviewing the records of the United States District Courts for the Southern, Middle, and Northern Districts of Alabama, the Court discovered that Plaintiff has at least three actions or appeals that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted, namely, *Riggins v. Hilbert,* CA 02-2184-RBP-JEO (N.D. Ala. Feb. 13, 2003); *Riggins v. Coody,* CA 99-1230-MHT-SRW (M.D. Ala. Nov. 23, 1999); *Riggins v. Hightower,* CA 99-0952-WHA-CSC (M.D. Ala. Apr. 7, 2000); *Riggins v. Hightower,* CA 99-0722-WHA-CSC (M.D. Ala. Sept. 13, 1999),[3] *aff'd* (11th Cir. Sept. 27, 2000).  Thus, Plaintiff has "three strikes," and the present action comes within the scope of 28 U.S.C. § 1915(g).

C. Possible Ways to Avoid the Application of § 1915(g).

    1. Payment of the $350 Filing Fee.

---

[3]  The docket sheet in CA 99-0722 does not contain specific language reflecting that this action was dismissed on one of the grounds found under § 1915(g), but it does indicate that it was dismissed prior to service of process. (Doc. 8).  Moreover, the United States District Court for the Middle District, in dismissing another of Plaintiff's actions under § 1915(g), *Riggins v. Robinson,* CA 04-0948 (M.D. Ala. Jan. 10, 2005), treated CA 99-0722 as a dismissal that counted as a "strike."  Thus, it appears to this Court that the dismissal was based on a ground enumerated in § 1915(g).

To avoid this action being precluded by the "three-strikes" rule, Plaintiff can the pay the $350 filing fee or demonstrate that he is "under imminent danger of serious of physical injury."  The first way to avoid preclusion of an action is to pay the $350 filing fee at the time of filing. *Vanderberg v. Donaldson,* 259 F.3d 1321, 1324 (11th Cir.), *cert. denied,* 535 U.S. 976 (2002).  Because Plaintiff has not had the opportunity to pay the $350 filing fee in this Court, Plaintiff is being given the opportunity to pay the full filing of $350 within the time for filing an objection to the Report and Recommendation. *Kotewa v. Corrections Corp. of America,* No. 3:10-cv-0923, 2010 WL 5156031, at *3 (M.D. Tenn. Dec. 14, 2010) (unpublished) (allowing the prisoner to pay the filing fee after the action was removed to federal court);[4] *cf. Dupree v. Palmer,* 284 F.3d 1234, 1236 (11th Cir. 2002) (The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless

---

[4] If additional time is needed to pay the full filing fee, Plaintiff must file a motion for extension of time within the time period for filing objections with a current copy of his inmate printout for the past year.  The Court, however, will not entertain unending, repetitive motions.  The failure to pay the filing fee within the time for filing an objection is grounds for dismissal of this action. *Kotewa,* No. 3:10-cv-0923, 2010 WL 5156031, at *3.

7

to pay the full filing fee when his next action is filed).[5] The payment of the filing fee is one of the PLRA's deterrents because it raised the "cost to a prisoner of filing a meritless lawsuit." *Vanderberg,* 259 F.3d at 1324; *see Mitchell v. Farcass,* 112 F.3d 1483, 1488-89 (11th Cir. 1997)(Congress placed economic incentives in the PLRA "that would prompt prisoners to 'stop and think' before filing a complaint," with "[t]he filing fee [being] small enough not to deter a prisoner with a meritorious claim, yet large enough to deter frivolous claims and multiple filings.").

    2.   <u>Satisfying the Imminent Danger of Serious Physical Injury Exception</u>.

The second way in which to avoid the preclusion of this action by the "three-strikes" rule is for Plaintiff's allegations to show that he was "under imminent danger of serious physical injury" at the time that he filed this action in state court. *Rivera v. Allin*, 144 F.3d 719, 723 (11th Cir. 1998) ("The only exception to section 1915(g) is

---

[5] Plaintiff is well aware that he would be subject paying the $350 filing fee if he filed an action in this Court. Plaintiff has had several actions dismissed by this Court pursuant to 28 U.S.C. § 1915(g), when he did not pay the filing fee at the time of filing his complaint, namely, *Riggins v. Culliver,* CA 05-0745-CG-B (S.D. Ala. Sept. 6, 2006); *Riggins v. Dr. Barnes,* CA 08-0157-KD-B (S.D. Ala. Feb. 4, 2010); *Riggins v. Allen,* CA 08-0195-CG-C (S.D. Ala. May 29, 2008); *Riggins v. Culliver,* CA 08-0651-CB-M (S.D. Ala. Feb. 23, 2010); and *Riggins v. Jones,* CA 12-0284-KD-M (S.D. Ala. July 19, 2012).

8

if the frequent filer prisoner is 'under imminent danger of serious physical injury.'"), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199, 215-16 (2007); *Adbul-Akbar,* 239 F.3d at 315 ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."), *cert. denied*, 533 U.S. 953 (2001); *Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004) ("a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999) (the imminent danger of serious physical injury faced must be at the time the complaint is filed, not at a prior time).

In order to satisfy the exception to § 1915(g), "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." *Brown,* 387 F.3d at 1350. A plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury, and vague allegations of harm and unspecific references to injury are insufficient." *Ball v. Allen*, CA No. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (unpublished)

9

(citations and quotation marks omitted) (Granade, C.J.). Furthermore, the allegations must demonstrate that at the time the complaint was filed the danger existed. *Id.* at *2.

Plaintiff's Complaint was signed by Plaintiff on July 22, 2012, and was scanned by the state court on August 1, 2012. (Doc. 1-1 at 3; www.alacourt.com, cv-2012-000073.00).[6] In the Complaint Plaintiff alleges that on April 27, 2012, through a grievance, he complained to Defendant Nurse Sylvia Hicks about the policy that allowed an officer, instead of medical personnel, to bring him his asthma inhaler. (*Id.* at 6). Defendant Hicks responded that she would check into this. (*Id.*). Then, on June 7, 2012, Defendant Officer Dixon brought a green liquid to Plaintiff, telling Plaintiff it was "lactolos," which

---

[6] The date of filing for a prisoner action is the date that the prisoner delivers the document to officials for filing. *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988) (delivery of prisoner's notice of appeal to prison officials for mailing to the court constituted filing); *Garvey v. Vaughn,* 993 F.2d 776, 783 (11th Cir. 1993) (applying *Houston v. Lack* to a prisoner's filing of a § 1983 action). Here, Plaintiff filed his Complaint sometime between July 22, 2012, when he signed his complaint, and when the state court scanned it on August 1, 2012. For the reasons discussed *infra*, it is not necessary to determine the exact date of filing.

10

Plaintiff receives in addition to other medications to help with his bowel movements.  (*Id.* at 6, 8).  Within thirty to forty-five minutes of taking the medicine, Plaintiff suffered chest pains and shortness of breath.  (*Id.* at 6).  On June 9, 2012, he filled out a sick call request for reflux.  (*Id.*).  On June 10, 2012, Nurse Peavy prescribed a tablet for acid reflux.  (*Id.*).  On that date, he also complained to Defendants Hicks, Patterson, and Givens about being given medicine by Defendant Dixon that made him sick.  (*Id.* at 7).

On June 11, 2012, Defendant Givens stated that no officer would bring Plaintiff his medicine.  (*Id.*).  Then, on June 21, 2012, at the Chronic Care Clinic, Plaintiff complained to Dr. Barber about a pain in his chest, and she gave him more pills.  (*Id.*).

From June 12, 2012, to July 17, 2012, Plaintiff repeatedly requested a grievance appeal form from Defendant Myers but did not receive one.  (*Id.*).  On July 16, 2012, Plaintiff submitted another sick call request for chest pain and shortness of breath, notified Defendant Givens about being denied a medical grievance appeal form, and requested a medical grievance form from Defendant Myers.  (*Id.*).

On July 16, 2012, Defendant Hicks told Plaintiff that Corizon was terminating her because of Plaintiff's grievance and her "deliberate indifference to the substantial risk of harm." (*Id.* at 8). On July 17, 2012, Plaintiff received a medical grievance appeal form from Defendant Givens. (*Id.*). After submitting the grievance appeal form, Defendant Myers summoned Plaintiff on July 19, 2012, to a conference where he told Plaintiff that Defendant Hicks was being terminated and admitted that Defendant Hicks was indifferent in her written response to his grievance dated June 10, 2012. (*Id.*). On July 18, 2012, Defendant Weaver told Plaintiff they had some inmates in general population ready "to beat the shit out of Plaintiff for getting them folks fired with your stupid lawsuit." (*Id.* at 9).

Plaintiff concludes his Complaint by stating that it was through Defendants' failures that he "was the victim of severe chest pains and shortness of breath on June 7, 2012." (*Id.* at 10). On account of their failures, Plaintiff seeks a declaratory judgment, compensatory and punitive damages, costs, and any other relief the may deem just. (*Id.*).

After reviewing the Complaint, the Court finds that it does not present a claim for an imminent threat of serious

12

physical injury at the time the Complaint was filed. The reason for Plaintiff filing this action is that he suffered chest pains and shortness of breath on June 7, 2012, after he received medicine from Defendant Dixon, instead of medical personnel. According to the allegations, this practice eventually was stopped. (*Id.* at 7). Except for the allegations regarding the reaction to the medicine and the brief mention that Defendant Weaver told Plaintiff "'we' got some inmates in general population" to beat Plaintiff for causing Defendant Hicks to be terminated (*id.* at 10), there are no other allegations concerning a physical injury. Concerning Defendant Weaver's statement, this nebulous allegation does not convey that injury is imminent, particularly when Plaintiff was confined in segregation. (Id. at 4). The only reference to a physical injury being directly caused by a Defendant is when Defendant Dixon gave Plaintiff his medicine on June 7, 2012. (*Id.* at 6). Thus, the Court concludes Plaintiff cannot avail himself of the exception to § 1915(g) – he was under imminent danger of serious injury at the time he filed the Complaint on or about July 22, 2012.

III. Conclusion.

Because Plaintiff cannot avail himself of § 1915(g)'s exception, and he has not paid the $350 filing fee as of

13

this date, Plaintiff's action is due to be dismissed without prejudice. *Dupree*, 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to § 1915(g) does not "pay the filing fee at the time he *initiates* the suit"); *Vanderberg,* 259 F.3d at 1324 (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced). Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g). In the event that Plaintiff pays the $350 filing fee within the time period for filing fee objections to the Report and Recommendation, the Clerk is **DIRECTED** to forward this action to the undersigned in order for the Report and Recommendation to be withdrawn.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

14

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[7] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.   2.   *Transcript (applicable where proceedings tape recorded)*.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 19th day of October, 2012.

               s/ BERT W. MILLING, JR.
              UNITED STATES MAGISTRATE JUDGE

---

[7]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED.R.CIV.P. 72(b)(2).